(No. 22066.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVID J. JOHNSON, Plaintiff in Error.

*Opinion filed February 23, 1934.*

JOHAN WAAGE, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

An information was filed by the State's attorney of Cook county in the municipal court of Chicago on June 25, 1931, charging the plaintiff in error (hereinafter referred to as the defendant) with a violation on the first day of September, 1929, of the Illinois Securities act. The defendant entered a plea of not guilty. A trial by jury was waived and the cause tried before the court. Defendant was found guilty. Motions for new trial and in arrest of judgment were overruled and he was sentenced by the judgment of the municipal court to imprisonment for three months in the Cook county jail and to pay a fine of $1000 and costs. A writ of error was sued out of the Appellate Court for the First District to review the judgment, and that court affirmed the judgment of the trial court. A writ of error has been sued out of this court to review the judgment of the Appellate Court, and the cause is now here for review.

To maintain the charge the People produced George P. Dougherty, a deaf mute, the prosecuting witness, who testified on direct examination that on the first day of September, 1929, he saw the defendant at the defendant's office at 105 West Monroe street, Chicago; that on that occasion he suggested to the witness that he trade certain bonds that he had for Fairfax Securities Company (hereinafter referred to as the Fairfax Company) stock; that he had met the defendant some three or four months before September with one Morry, who had sold him bonds on one or two former occasions; that one or two days before Sep-

tember 1 the witness had talked with the defendant about the Fairfax Company; that on the first day of September the deal was closed, the bonds were exchanged and the certificates for the stock were issued and delivered to the defendant; that on that occasion he gave the defendant in exchange for thirty-one shares of preferred and thirty-four shares of common stock of the Fairfax Company six bonds of the aggregate face value of $6000; that these bonds consisted of one Boulevard Apartment Building bond, two Ellis Avenue bonds, one Kenshire bond and two Mitt-Ann bonds, each of said bonds being of the par value of $1000. On cross-examination the witness substantially adhered to his testimony in chief, although he was somewhat hazy as to the details of the transaction. He testified that after making the exchange he demanded a cancellation of the trade, and that the defendant returned to him the two Ellis Avenue bonds and later another bond; that there was only one exchange of bonds and stocks, and that he refused to take the dividends on the stock because he wanted his bonds back.

The People then offered in evidence seven exhibits and rested its case. People's exhibits 2 and 3 are the certificates of stock for the amount of shares above mentioned, dated September 1, 1929. Exhibit 7 is the charter of the Fairfax Company. Exhibit 6 is the certificate of the Secretary of State that the company had not obtained the consent and approval in writing of that office for the sale of any securities in class "C" by the filing of any statement specified in paragraph (a) of section 7 of the Illinois Securities act, and that no statements and no documents had been filed by the company as provided by section 9 of that act. The other exhibits will be referred to later.

The defendant on direct examination testified that he was in the business of buying and selling first mortgage real estate bonds; that the subject matter of the transaction in question came up along in the early part of July,

1929; that he had not known or met the complaining witness before; that the witness was one of the original incorporators of the Fairfax Company; that he submitted the proposition to trade about July 20, 1929, and made the exchange on July 24, 1929, then delivering to Dougherty two stock certificates, one for forty-seven shares of preferred stock and one for forty-eight shares of class "A" common stock of the Fairfax Company, and received the six bonds from the defendant. He testified that he told Dougherty that he was selling him stock that belonged to Mrs. Johnson, who is his wife and who is the same person described as Irma Johnson in the original statement of incorporation in evidence; that it took four or five days to consummate the deal and that he gave Dougherty plenty of time to think it over; that the original and only deal involved $6000 worth of bonds and $6000 worth of stock; that on September 1, 1929, he gave Dougherty back $2000 of his bonds and gave him People's exhibits 2 and 3 and took back the old certificates dated July 24, 1929; that in the transaction he represented his wife, Mrs. D. L. Johnson, and that it was her stock he traded; that his exhibit 1, with enclosure, introduced in evidence, was in Dougherty's handwriting and was sent to the witness by mail; that his exhibit 2, introduced in evidence, was a carbon copy of an invoice describing the transaction with Dougherty, dated July 24, 1929, and that he personally gave the original of the invoice to Dougherty on July 24, when the exchange was made.

On cross-examination the defendant stated that he was president of the Fairfax Company; that only the company's name had appeared on the doors of its offices; that the company paid the rent; that he called at Dougherty's home with one Morry; that shortly thereafter they met in the witness' office, and also later at Dougherty's home, where the matter of exchange was taken up; that he exchanged stock of the Fairfax Company for Dougherty's

bonds; that he received one Kenshire bond, two Mitt-Ann bonds, two Ellis Avenue bonds, and one Boulevard bond; that he valued the Kenshire bond at about forty-five to fifty cents on the dollar and the Boulevard bond at about twenty to thirty cents on the dollar; that they had a better price at the time of the transaction in July, 1929; that the value was not as much as ninety-seven and one-half; that the stock he traded to Dougherty belonged to the witness' wife; that he told Dougherty that the stock exchanged belonged to the witness' wife and also specifically told him the stock was not treasury stock; that he represented his wife; that he was acting individually, as agent for Mrs. Johnson, and not as president of the Fairfax Company and was not acting for that company; that the Fairfax Company has no office now; that he is still an officer of the company but has recently been notified that the charter was annulled; that he was not still conducting the affairs of the company but had desk space elsewhere; that the certificates that were first in possession of Dougherty and later surrendered may be among the effects of the company that operated the building at 105 West Monroe street and which effects the building company took over when it foreclosed a chattel mortgage on the furniture; that he was compelled to move from that building about November, 1930; that three of the bonds given as consideration for stock were returned to Dougherty; that the witness first gave Dougherty back the $2000 Ellis Avenue bonds and got the certificates back and issued new certificates; that later he gave him back one more $1000 bond, and that Dougherty now has $1000 more stock than he is entitled to; that the new certificates were issued September 1 and that he gave them to Dougherty, and also gave him a dividend check for seven per cent preferred stock for a period of three months, which he accepted. On re-direct examination the defendant stated that when he received back the original certificates they were endorsed by Dougherty.

The State in rebuttal placed on the stand a lawyer who testified that he was present at the trial of a case before Judge Jonas in the city hall building on the 8th or 9th of June, 1931, and that the defendant testified on that occasion as a witness that he was a broker but not licensed. This was all the evidence in the case.

The State in its statement of the case says that "the sole questions are whether or not the sale is an 'isolated sale by an owner' within the exemption of class 'B,' and whether or not the burden to prove such exemption rested upon the defendant," while the defendant earnestly insists that the People did not establish his guilt beyond a reasonable doubt. The issues in the court are therefore quite clear cut.

There is a conflict between the defendant and the prosecuting witness upon matters vital to the issues in the case. We cannot shut our eyes to some matters in the record showing either that the memory of the prosecuting witness is unreliable or that it is one of convenience. The evidence tends to prove that Dougherty was anxious to get rid of his bonds. He admitted that he wrote and signed the letter offered in evidence by the defendant under date of July 25, 1929, in which Dougherty says, "I could not get in touch over the phone with you the night before I made the exchange with you; give me your residence phone." Although insisting vehemently at all times that the exchange of securities was not made until September, he gives no satisfactory explanation as to what exchange he referred in that letter. The evidence conclusively establishes that he never had any exchange of property with the defendant other than the one in question. He strenuously insisted that he never had any stock certificates other than those offered in evidence on behalf of the People. Those certificates are each dated September 1, 1929, one for thirty-one shares of preferred and the other for thirty-four shares of common class "A" stock. The defendant says that these

were re-issued certificates after the return to the defendant of the two Ellis Avenue bonds of $1000 par value each, both of which were in default. With the letter to the defendant was enclosed a letter from H. Smith & Co. to Dougherty under date of May 29, 1929, which discloses that Dougherty was endeavoring to get Smith & Co. to take back the Mitt-Ann Apartment bonds.

People's exhibit 1 shows a typewritten statement of the proposed trade listing the above named six bonds with some interest accrued on the Kenshire and Mitt-Ann bonds, each bond being valued in the statement at ninety-seven and one-half, with a total value of $5897.30. It further shows forty-seven units, consisting of one share of seven per cent preferred and one share of class "A" common at $5875, plus one share class "A" common, making a total of $5900. People's exhibit 5 is a letter dated May 8, 1930, written on stationery of the Fairfax Company, signed in the name of the company and returning the Kenshire bond to Dougherty. People's exhibit 4 is a sheet of paper containing the handwriting of both Dougherty and the defendant. At the top of this sheet there is written in the handwriting of the defendant:

> "the extra share of common stock is to make the full
>     amount of .................................. 5900.00
> Your credit is ................................. 5897.30
>                                                  2.70
> ·47 sh Pref 7% @ 100 ea.................. $4700.00
> 47 " com Cl A @ 25 ea.................. 1175.00
> One sh. Com @ 25....................... 25.00
>                                      $5900.00"

There then follows in Dougherty's handwriting, "How will the new stock certificate read?" This is followed in the writing of the defendant: "Pref cert by themselves 100 par value 4700; Bal comn stock, 1200."

The defendant testified that at the time the Ellis Avenue bonds were returned to Dougherty on September 1,

1929, Dougherty surrendered his certificates, and new certificates were re-issued to him after deducting the value of the Ellis Avenue bonds therefrom. The invoice, the defendant's exhibit 2, dated July 24, 1929, shows $2.70 more accrued interest on the Mitt-Ann bonds than does People's exhibit 1, and shows the values of the stocks and bonds, each, to be $5900. The statement introduced by the People shows the value of the Ellis Avenue bonds as $1950.

"The first preferred certificate of 47 shares: certificate of September 1st, 31 shares—difference of 16 shares @ $100 per share ................................. $1600
The first class 'A' common stock certificate: 48 shares—certificate of September 1st, 34 shares—difference of 14 shares @ $25 per share...................... 350
       Total . . . ..................................... $1950"

—which is the exact amount that all parties agree was the trade value fixed in the transaction for the Ellis Avenue bonds. We believe this calculation shows that Dougherty is mistaken when he states he never received any certificates other than those of September 1.

People's exhibit 4 was undoubtedly made before the trade was closed. The sentence above referred to, written by Dougherty, would tend to corroborate the statement of the defendant that the certificates he was proposing to trade at that time not only stood in the name of his wife and that he so told Dougherty, but absolutely corroborates him as to the number of shares proposed to be issued to Dougherty in the trade. Dougherty did not deny in his testimony that the defendant told him during the negotiations that the stock belonged to his wife and that the stock proposed to be traded was not treasury stock. The charter of the Fairfax Company offered in evidence by the State showed a capital of $26,500, all paid in cash. Irma Johnson subscribed for $10,000 and the defendant for $1475 of the capital stock. The stock was divided into

250 shares of preferred stock of $100 par value and 300 shares of common stock at five dollars par value.

This case must be decided under the provisions of the Illinois Securities act in force at the time of the sale, and all references to such act are to the act in force at such time. It is apparent that Mrs. Johnson was the original owner of a considerable amount of the original stock issued by the corporation at the time it was incorporated and that her stock was paid for by her in money. It is therefore reasonable to believe that she had stock which she could, if she so desired, offer for trade or sale in the Fairfax Company. Under paragraph 1 of section 5 of the act the *bona fide* owner of class "B" securities is permitted to sell his own securities for his own account without any permit being required from the Secretary of State. We are convinced that the exchange of stock in question was made on July 24, 1929, and not on September 1, 1929, as testified to by Dougherty. There was no evidence by the People to show whether the stock traded to Dougherty was class "A," "B," "C" or "D." The record is barren of the financial standing of the company in either July or September, 1929, what its assets and liabilities were and whether it was solvent or insolvent. The evidence did show that after the trading of the stock to Dougherty the company paid its regular quarterly dividend on its preferred stock.

While the certificate of the Secretary of State offered in evidence proved *prima facie* that the Fairfax Company had not complied with either paragraph (*a*) or (*b*) of section 7 of the Illinois Securities act, yet it did not prove that the securities of the company were in either class "C" or class "D" nor did it prove that such certificates were class "A" or class "B" securities. Evidence must be produced by the People showing in what classes the securities belonged in a prosecution under the act. If the proof shows that the securities were class "C" or class "D" se-

curities, then the certificate of the Secretary of State, as provided by paragraph 5 of section 37, becomes material and competent, but without evidence to show that the securities in question are class "C" or class "D" the certificate of such secretary is neither material nor competent. The burden was not on the defendant to prove within what statutory definition the securities of the Fairfax Company fell, but it was the duty of the People to prove beyond a reasonable doubt that the securities were either class "C" or class "D" securities. This could be done by direct proof of that fact or by proof that the securities were not in either class "A" or class "B." *People* v. *Love,* 310 Ill. 558, does not hold, as contended by the People, that the burden is upon the defendant to prove that the stocks in question were not class "C" or class "D" securities. We may be very suspicious that the securities in question were class "D" securities, but lawsuits cannot be decided on surmise, conjecture or supposition. Before the burden was cast on the defendant to prove that the sale made by him was within any of the exemptions provided by paragraph 2 of section 37 of the Illinois Securities act, the People must first have made out a *prima facie.* case proving the defendant's guilt as charged, beyond a reasonable doubt.

Much is said in the argument on behalf of the People of the proof that the Fairfax Company at the time of the trial had no office, its charter had been forfeited and its furniture and equipment sold for delinquent rent. These events all occurred subsequent to the sale or exchange under consideration. The court has the right to take into consideration current history. The court is not unmindful of the financial cataclysm which rocked the nation in the fall of 1929. A large number of corporations of far greater magnitude and occupying high financial positions have fallen to destruction since the fall of 1929. The fact that the Fairfax Company met with financial difficulties in 1930 does not prove its financial condition or the value or con-

dition of its securities in either July or September, 1929. The charter of the company was not issued until August 14, 1928. Since the company was not two years old on July 24, 1929, its stock could not be class "C" stock.

It is not necessary in the state of this record for the court to decide whether class "D" securities may be sold by the *bona fide* owner thereof for his own account, as under the exemption made for class "B."

The evidence did not prove the guilt of the defendant as charged, beyond all reasonable doubt.

The judgments of the municipal court and the Appellate Court are each reversed and the cause remanded.

*Reversed and remanded.*