The People of the State of Illinois, Defendant in Error,
v. F. Paul Baldwin, Plaintiff in Error.

Opinion filed March 4, 1937.

J. Roy Browning, of Chicago, and Lawrence A. Glenn, for plaintiff in error.

C. Edgar White, State's Attorney, and Orwin H. Pugh, Assistant State's Attorney, for defendant in error.

Mr. Presiding Justice Stone delivered the opinion of the court.

The plaintiff in error, defendant below, F. Paul Baldwin, was convicted of violating the Illinois Securities Law, Ill. State Bar Stats. 1935, ch. 32, ¶¶ 254–296; Jones Ill. Stats. Ann. 13.01–13.54, on March 31, 1936, in a trial before the county court of Jackson county, trial by jury being waived, and sentenced to the Illinois State Farm at Vandalia, Illinois, for a period of six months and was sentenced to pay a fine of $1,000. The sentence provided that if the fine and costs be not paid at the expiration of the term of imprisonment, the defendant be confined at the Illinois State Farm at Vandalia, Illinois, until such fine and costs be fully satisfied and discharged at the rate of $1.50 per day, or until the said defendant be otherwise discharged according

to law. This writ of error is prosecuted to review that judgment and sentence.

This court reviewed a former judgment of conviction in this cause and reversed the judgment and remanded the cause. *People v. Baldwin,* 278 Ill. App. 327.

The information contained three counts. The first count charged that the defendant on January 22, 1930, in Jackson county, was the solicitor and agent for the Equitable Bond and Mortgage Company of Chicago, Illinois, and that the defendant unlawfully sold and offered for sale an interim certificate issued by the Equitable Bond and Mortgage Company for 80 shares of Class B and 20 shares of Class C of beneficial interest in the Old Colony Realty Trust, to one Grace Perry, in violation of the Illinois Securities Law, in that the securities offered for sale and sold were defined as Class ''D'' securities, without the issuer of said securities having filed in the office of the Secretary of State the statement and documents required to be filed by the Illinois Securities Law.

The second count charged the same transaction and was in other respects the same except that the defendant was described as an agent, solicitor, and broker of the Equitable Bond and Mortgage Company instead of simply a solicitor and agent for the said company, as in the first count.

The third count charged the same transaction except that it charged a sale of the actual shares of beneficial interest in the Old Colony Realty Trust instead of a sale of an interim certificate.

The evidence produced at the trial showed that the defendant had an office in Carbondale, Illinois, and was, among other things, engaged in selling securities for the Equitable Bond and Mortgage Company of Chicago, Illinois; and that one Carlos McKinney was employed by the defendant as a solicitor and agent in selling securities in December, 1929, and January, 1930.

Carlos McKinney sold a first mortgage 6½ per cent bond in the principal amount of $500 on property located at 180 West Washington street, Chicago, Illinois, to one Grace Perry. On January 22, 1930, about six weeks after she had purchased the above bond, Grace Perry, at the request of the defendant, traded the bond for an interim certificate for Old Colony Realty Trust shares. She testified that the defendant came to her house and told her that the bond had been called and gave her the interim certificate above referred to. She stated that the preliminary proof sheet describing the Old Colony Realty Trust shares had been shown to her by the defendant previous to the time he sold her the bond above described, but that it was not shown to her at the time of the exchange of the bond for the interim certificate aforesaid. The face of the interim certificate is as follows:

"UNITED STATES OF AMERICA INTERIM CERTIFICATE

No. 2766 ......Issued by ...... 100 shares
Equitable Bond and Mortgage Co.
Safety
Conservation
Reliability.

Chicago, Ills., Jan. 22, 1930
"Upon the surrender of this certificate properly endorsed Equitable Bond & Mortgage Co. will deliver to Grace Perry or order 80 shares of Class B and 20 shares of Class C Beneficial Interest of Old Colony Realty Trust due optional with coupons attached representing all interest accruing thereon, from ...........
until maturity, when, if and as said securities are issued and delivered to Equitable Bond & Mortgage Co. When said securities have been received by Equitable Bond & Mortgage Co. and are ready for delivery, no-

tice to that effect will be transmitted to the above named holder hereof at his registered address.

"Equitable Bond & Mortgage Co.
(Signed) J. Marvin Austin, Treas.

Countersigned:
(Signed)
H. E. Christensen, Sec."

The preliminary proof sheet describing the Old Colony Realty Trust shares (omitting the financial statement), is as follows:

"Preliminary Proof No. 5—Subject to Change.

"New Issue

"Securities in Class 'D' under the Illinois Securities Law. These are speculative securities.

OLD COLONY REALTY TRUST

(Not Inc.)

56,000 Class B Shares of Beneficial Interest.
31,100 Class C shares of Beneficial Interest.

"Mr. W. F. Roberts, Chairman of the Executive Committee of the Old Colony Realty Trust, has summarized his letter to us, as follows:

"History: Old Colony Realty Trust was organized on August 1, 1929, for the purpose of acquiring the following nine properties: 73 East Elm Apartments, Richmond Apartments, Oxford Apartments, Tudor Manor Apartments, Beverly Crest Apartments, Eastlawn Apartments, Union Court Apartments, Normal Villa Apartments, of Chicago, and the Southland Apartments of Louisville, Kentucky.

"Earnings: Old Colony Realty Trust has leased all of the above properties for a period of ten years to the Apartment Selection Service, Inc., an Illinois Corpora-

tion at an average annual net rental of $97,500 payable monthly in advance. Under the terms of this lease the Apartment Selection Service, Inc., is obligated to pay all operating expenses including Real Estate Taxes and Interest on First Mortgage bonds.

"Capitalization: A consolidated Balance Sheet of the Old Colony Realty Trust after giving effect to the acquisition of above properties, the sale of $620,000 6% Refunding Convertible Mortgage Sinking Fund Gold Bonds, and the sale of 56,000 Class B shares of Beneficial Interest and 31,100 Class C shares of Beneficial Interest and the refunding of all First Mortgage Bonds maturing prior to December 31, 1933, may be summarized as follows:

(Here followed an assumed balance sheet.)

"In view of the high character of the properties acquired by the Trust, it is expected to derive large profits from the appreciation in the value of the properties, which appreciation would further enhance the value of these shares.

"Management: Old Colony Realty Trust will be managed by an Executive Committee of Mr. W. F. Roberts, Mr. F. M. Austin and Mr. H. W. Bye, attorney associated with Litsinger, Healy & Reid. All of the properties which have been acquired by the Old Colony Realty Trust with the exception of the Southland Apartments at Louisville, Kentucky, are located in the finest residential neighborhoods in Chicago. These buildings have enjoyed a splendid occupancy due to their expert management and the co-operative advertising campaigns which have been appearing in daily newspapers during the past two years.

"The Southland Apartments are located in one of the finest residential districts of Louisville, Ky. within a mile and a half from the center of the downtown business district.

———————————————

"These apartment properties have attained the enviable reputation of being one of the best managed chain of Apartment Properties in the United States.

Price $\left\{ \begin{array}{l} \text{2 Shares Class B} \\ \text{1 Share Class C} \end{array} \right\}$ $15.00 per Unit

When, as and if issued and received by us.

"All legal matters pertaining to this issue have been passed on by Litsinger, Healy & Reid, Attorneys for the Trust.

EQUITABLE BOND & MORTGAGE COMPANY

Equitable Building,
180 West Washington Street,
Chicago, Illinois.

Equitable Life & Casualty Bldg.
Fourth and Market Streets,
Louisville, Kentucky."

Carlos McKinney testified that the preliminary proof sheet was used by Mr. Baldwin, the defendant, and Mr. McKinney in the selling of the securities in question. He stated that it was distributed and used for explaining the security behind the investment.

Other witnesses testified that they had purchased interim certificates for the same proposed issue as the one sold to Grace Perry.

The defendant did not testify.

On the former appeal above referred to, this court reversed the former judgment of conviction for the reason that the defendant was found guilty as to each of the three counts of the information and was separately sentenced as to each count of the information.

The court found that the proof which would sustain the averment of the sale of an interim certificate would not support the averment of a sale of the actual shares of Old Colony Realty Trust. On the second trial, the judgment, from which this writ of error was prosecuted, was based upon the finding of the court that the defendant was guilty in the manner and form as charged in the information. The single sentence above referred to was imposed by the court.

The plaintiff in error contends that the finding of the court that the defendant was guilty in the manner and form as charged in the information amounts to a finding of *guilt upon each of the counts of the information. Consequently, he takes the position that the second judgment of conviction was equally erroneous with the first* under the holding of this court on the former appeal. We think this contention is unsound. Where the offenses charged are of the same grade and carry the same punishment or where the single transaction is averred in different forms in different counts charging the same crime, although the averments as to the manner in which the crime was committed are not consistent with one another, a general verdict of guilty will be supported by proof of the commission of the crime in the manner and form charged in any one of the counts. So in *People v. Hein,* 315 Ill. 76, where it was alleged in one count that a burglary had been committed forcibly and in the nighttime and in another count it was alleged to have been committed without force and no reference was made as to the time of day, the court held that a general verdict of guilty might be referred to either count of the indictment. *Tobin v. People,* 104 Ill. 565, cited by the plaintiff in error, is not in point for the reason that the separate counts there charged larceny, robbery, and receiving stolen property, which are offenses of different grades and carrying different punishment. The case of *People v. Schuster,* 339 Ill. 73, is inapplicable for the same reason. We find nothing in

*Armstrong v. People,* 37 Ill. 459; *People v. Fitzgerald,* 297 Ill. 264; *Townsend v. People,* 4 Ill. 326; *Holliday v. People,* 9 Ill. 111; and *Curtis v. People,* 1 Ill. 256, to interfere with this result.

No different principles should be applied in the case of a trial before the court than that applied in the case of a trial by jury. Had the defendant presented a motion to the court requesting a separate finding as to each count, no doubt such a finding would have been obtained.

The defendant complains of the form of the sentence. It is contended that the court is without power to sentence the defendant as above recited. While the sentence did not follow the language of the statute, it appears that the error was in the defendant's favor and that the defendant is not in a position to complain of the sentence. *Berkenfield v. People,* 191 Ill. 272, on pages 276–8. This court is obliged to follow that decision of the Supreme Court of Illinois rather than the decision of the Appellate Court for the Second District of Illinois in the similar case of *People v. Herman,* 245 Ill. App. 94.

The defendant contends that the proof fails to show that the securities sold are defined as Class D securities under the Illinois Securities Law. The burden is upon the People to prove beyond a reasonable doubt that the securities sold were Class D securities. *People v. Johnson,* 355 Ill. 380. This proof may be made either by a showing that the securities were Class D securities or by a showing that they were not in Class A, B, or C. The securities were obviously not Class A securities or Class B securities. Except for People's Exhibit 3 (the preliminary proof sheet above referred to), and the testimony of Carlos McKinney with respect thereto, there might very well have been a doubt whether the securities could be defined as Class C securities. The question is a mixed question of law and

fact. The determination of Class C securities involved a knowledge of the facts concerning the existence of the borrower, the earnings of the borrower, and the value of the property of the borrower. These are facts which it is reasonable to assume the agent and solicitor would know. While the evidence appears to show that the preliminary proof sheet was not shown to Grace Perry at the time the particular interim certificate in question was sold, the evidence clearly demonstrates that the defendant used this proof sheet in selling interim certificates for this issue of shares in this trust, and that this proof sheet was shown to Grace Perry previous to the time of the sale of this interim certificate. The court admitted this proof sheet in evidence for the purpose of characterizing the nature of the securities sold. It is clear that the use of this pamphlet in the sale of these securities amounted to a representation by the defendant that the facts contained in the pamphlet were true. Consequently, the court could well have found that the defendant admitted in making the sales of these securities, that they were in Class D securities. Since the statement that the securities were Class D securities under the Illinois Securities Law appears at the beginning of the pamphlet, there was evidence to support a finding that the securities were Class D securities, and that the defendant knew that they were Class D securities.

The defendant contends that there is a fatal variance between the allegations in the information and the proof in the record, in that the certificate of the secretary of state of noncompliance with section 9 of the Illinois Securities Law, Ill. State Bar Stats. 1935, ch. 32, ¶ 262; Jones Ill. Stats. Ann. 13.12, by Old Colony Realty Trust, or anyone for it, varies from the allegation of the information that the securities sold by the defendant were issued by the Equitable Bond and Mortgage Company of Chicago without compliance by the Equi-

table Mortgage Company with the Illinois Securities Law. We think that the certificate to the effect that the required statements had not been filed "either by, for or on behalf of the Old Colony Realty Trust" sufficiently excludes any possibility that Old Colony Realty Trust shares had been qualified by anyone. We do not think that the certificates leave open the possibility that the Equitable Bond and Mortgage Company had qualified the shares.

Our view of the sufficiency of the finding of the court that the defendant is guilty in the manner and form as charged in the information also disposes of the contention of the defendant that the defendant could not be both an "agent and solicitor" as charged in the first count, and a "broker" as charged in the second count of the information. In our opinion, the evidence fully supports a conviction upon the first count of the information. We find no substantial error in the record. The judgment of the county court of Jackson county will be affirmed.

*Affirmed.*